# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Garvin*, 2013 IL App (1st) 113095

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN GARVIN, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-11-3095 |
| Filed | August 7, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful possession of a weapon by a felon based on the possession of ammunition in his home was upheld over his contention that his conviction violated the second amendment because his possession of ammunition was not accompanied by a firearm, since the State's right to prohibit felons from possessing firearms is coextensive with its ability to prohibit felons from possessing ammunition. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-7480; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Darrel F. Oman, all of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Margaret M. Smith, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Pierce and Mason concurred in the judgment and opinion. |

## OPINION

¶ 1    Does the unlawful use of weapons by felons statute (720 ILCS 5/24-1.1 (West 2010)), violate a defendant's second amendment rights by criminalizing the knowing possession of firearm ammunition alone, without regard to whether or not the defendant also possesses a firearm?

¶ 2    Defendant draws on *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010), cases in which the United States Supreme Court recognized an individual's second amendment right to bear arms, to argue the unlawful use of weapons by felons statute infringes on that right either facially or as applied to him, and is unconstitutional. But defendant's argument is belied by the Supreme Court's recognition that the second amendment guarantees "the right of *law-abiding, responsible* citizens to use arms in defense of hearth and home." (Emphasis added.) *Heller*, 554 U.S. at 635; see also *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3047 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill ***.' We repeat those assurances here." (quoting *Heller*, 554 U.S. at 626)). As a convicted felon, defendant's second amendment rights may be constitutionally abridged.[1] We uphold defendant's

[1]All of the circuits to face the issue of felon in possession statutes post-*Heller* have rejected blanket constitutional challenges to the laws. See *United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011); *United States v. Barton*, 633 F.3d 168, 170-75 (3d Cir. 2011); *United States v. Williams*, 616 F.3d 685, 691-94 (7th Cir. 2010), *cert. denied*, ___ U.S. ___, 131 S. Ct. 805 (2010); *United States v. Rozier*, 598 F.3d 768, 77-71 (11th Cir. 2010), *cert. denied*, ___ U.S. ___, 130 S. Ct. 3399 (2010); *United States v. Vongxay*, 594 F.3d 1111, 1114-15 (9th Cir. 2010), *cert. denied*, ___ U.S. ___,131 S. Ct. 294 (2010); *United States v. Khami*, 362 F. App'x 501, 507 (6th Cir. 2010), *cert. denied*, ___ U.S.___, 130 S. Ct. 3345 (2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009), *cert. denied*, 559 U.S.___,130 S. Ct. 1686 (2010); *United States v. Stuckey*, 317 F. App'x 48, 50 (2d Cir. 2009); *United States v. Anderson*, 559 F.3d 348, 352 n.6 (5th Cir. 2009), *cert. denied*, ___ U.S. ___, 129 S. Ct. 2814 (2009).

convictions, finding the unlawful use of weapons by felons statute does not violate the second amendment's right to bear arms either facially or as applied to defendant. It would be a strange world indeed for the law to be constitutionally sound in preventing and prohibiting convicted felons from having firearms, but allowing them to keep the very thing that makes firearms deadly.

¶ 3                                                    BACKGROUND

¶ 4        Defendant, Kevin Garvin, was charged with one count of possession of a controlled substance with intent to deliver and one count of unlawful use or possession of a weapon by a felon (UUWF) based on his possession of firearm ammunition.

¶ 5        At the bench trial, Chicago police officer Michael Kelly testified that on April 16, 2011, a team of officers executed a search warrant at Garvin's home, 2124 West 70th Street. They recovered six bags of suspected crack cocaine from Garvin's girlfriend's person. They searched the bedroom, where they recovered more suspected crack cocaine behind an entertainment center. The officers also recovered five live .38-caliber bullets inside of a small red tin case on top of the entertainment center. Next to the tin, the officers found Garvin's state identification card, his Illinois probation card, a watch, a hat, and other personal items. In the bedroom closet, officers recovered a piece of mail from the Department of Health with Garvin's name on it and the address of the premises being searched. At the time of his arrest, Garvin did not have a firearm on his person, and no firearms were recovered from his home.

¶ 6        Garvin was arrested and advised of his *Miranda* rights. Officer Kelly testified Garvin then stated that the bullets and the bags of suspected crack cocaine found on his girlfriend belonged to him. He said the bullets "were from the old days" when he had "used them for protection." Officer Kelly also testified he never saw Garvin handle the recovered bullets.

¶ 7        The parties stipulated that a proper chain of custody of the physical evidence was maintained. The parties further stipulated that a forensic chemist tested and weighed the suspected crack cocaine. The substance tested positive for crack cocaine and weighed 5.2 grams. The State introduced Garvin's October 14, 2004, certified conviction in case number 04 CR 5469 for the offense of possession of a controlled substance with intent to deliver. Garvin was found guilty of the lesser included offense of possession of a controlled substance and unlawful use or possession of a weapon by a felon. The court inquired about Garvin's criminal history and the State responded that Garvin was on probation for one of his four previous convictions. Defense counsel acknowledged that defendant had violated probation and accepted a plea of a sentence of 26 consecutive months.

¶ 8        The trial court denied defendant's motion for a new trial and sentenced him to concurrent terms of six years and six months, and three years. Defendant's motion to reconsider his sentence was denied.

¶ 9        Defendant timely appeals.

¶ 10                                                     ANALYSIS

¶ 11       Garvin argues his UUWF conviction violates his right to keep and bear arms under the

second amendment of the United States Constitution. U.S. Const., amend. II. The second amendment provides, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In the much-discussed case of *District of Columbia v. Heller*, 554 U.S. 570 (2008), the United States Supreme Court struck down a District of Columbia law banning the possession of handguns in the home. In doing so, the Court recognized that the second amendment grants an individual the right to keep and bear arms (*Heller*, 554 U.S. at 592), and that the "central component of the right" is the right of armed self-defense, particularly in one's home. (Emphasis omitted.) *Heller*, 554 U.S. at 595, 599-600. In *McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010), the Supreme Court incorporated the second amendment right recognized in *Heller* against the states.

¶ 12   Garvin challenges the UUWF statute both as facially unconstitutional and as unconstitutional as applied to him. He argues that "a blanket prohibition against the mere possession of bullets with no firearm inside of one's home cannot survive constitutional scrutiny." Relying on *Heller* and *McDonald*, Garvin argues the UUWF statute is invalid as applied to him. In doing so, he recognizes that neither case addresses ammunition not accompanied by a handgun.

¶ 13   Garvin acknowledges he did not raise this issue before the trial court, but a constitutional challenge to a statute may be raised at any time, and thus, the issue is properly before this court for consideration. See *People v. Bryant*, 128 Ill. 2d 448, 454 (1989).

¶ 14   The UUWF statute provides:

"(a) It is unlawful for a person to knowingly possess on or about his person or on his land or in his abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or *any firearm ammunition* if the person has been convicted of a felony under the laws of this State or any other jurisdiction." (Emphasis added.) 720 ILCS 5/24-1.1(a) (West 2010).

The purpose of the UUWF statute "is to protect the health and safety of the public by deterring possession of weapons by convicted felons, a class of persons that the legislature has determined presents a higher risk of danger to the public when in possession of a weapon." *People v. Crawford*, 145 Ill. App. 3d 318, 321 (1986) (citing *Rawlings v. Department of Law Enforcement*, 73 Ill. App. 3d 267 (1979)).

¶ 15   We review the constitutionality of a statute *de novo. People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 200 (2009). Our supreme court has instructed us that statutes "are presumed constitutional" and that a party challenging the validity of a statute bears the burden of rebutting that presumption. *People v. Cornelius*, 213 Ill. 2d 178, 189 (2004). "Moreover, ' "it is our duty to construe acts of the legislature so as to uphold their constitutionality and validity if it can reasonably be done, and, further, that if their construction is doubtful, the doubt will be resolved in favor of the validity of the law attacked." [Citations.]' " *Davis v. Brown*, 221 Ill. 2d 435, 442 (2006) (quoting *People v. Inghram*, 118 Ill. 2d 140, 146 (1987)).

¶ 16   Garvin contends the UUWF statute is unconstitutional on its face because it impermissibly infringes on his second amendment right to keep and bear arms by criminalizing the possession of ammunition unaccompanied by a firearm. A facial challenge

-4-

to a statute contends that the statute is incapable of constitutional application in any context. *In re C.E.*, 161 Ill. 2d 200, 210-11 (1994). And a facial challenge is an exceedingly formidable challenge–to prevail, the defendant must show there are no set of circumstances under which the law would be valid. *In re C.E.*, 161 Ill. 2d at 210-11. " 'The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an "overbreadth" doctrine outside the limited context of the First Amendment. [Citation.]' " *In re C.E.*, 161 Ill. 2d at 210-11 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

¶ 17    Garvin also contends the UUWF statute is unconstitutional as applied to him. An as-applied challenge stems from the defendant's contention that the statute as it was applied to the defendant's particular situation is unconstitutional. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008). Facts surrounding the defendant's particular circumstances are only relevant to an as-applied challenge. *Russell v. Blagojevich*, 367 Ill. App. 3d 530, 534 (2006).

¶ 18    The State responds that defendant's constitutional challenges are without merit due to the fact that Garvin, who was on probation at the time of the crime, relinquished his right to possess a firearm or firearm ammunition in his home and, therefore, waived his second amendment claims. The State further argues that even if Garvin did not surrender his right to assert a second amendment claim based on his status as a convicted felon, his facial and as-applied challenges to the UUWF statute must fail.

¶ 19                               Status as a Probationer

¶ 20    Four months before this offense, on August 23, 2010, Garvin affirmed his relinquishment of any right to possess firearm ammunition by signing the rules and regulations of his probation. The State argues the terms and conditions of Garvin's probation agreement are analogous to the mandatory supervised release (MSR) agreement signed by the defendant in *People v. Wilson*, 228 Ill. 2d 35, 41 (2008), and, thus, defendant's constitutional challenge to his convictions under the UUWF statute should be rejected outright as "affirmatively waived pursuant to the ammunition clause of his probation Rules and Regulations."

¶ 21    In *Wilson*, our supreme court held that "probationers and parolees enjoy a greatly diminished expectation of privacy due to their status ***, and the salient government interest in preventing recidivism and protecting society from future crimes." *Wilson*, 228 Ill. 2d at 41. The court explained Illinois's parole system and the mandatory supervised release. *Wilson*, 228 Ill. 2d at 41. Under section 3-3-7 of the Unified Code of Corrections, all MSR agreements must contain a provision in which the defendant agrees not to possess a firearm or other dangerous weapon. *Wilson*, 228 Ill. 2d at 49; 730 ILCS 5/3-3-7 (West 2006). The State argues that based on *Wilson*, defendant's second amendment challenge has been specifically waived under the ammunition clause of his probation rules and regulations agreement.

¶ 22    Garvin contends we must strike Exhibit A, "Circuit Court of Cook County Adult Probation Department Rules and Regulations of Probation Agreement" (hereinafter, Rules and Regulations), of the State's brief and any arguments related to that document because the document was not properly made a part of the appellate record.

¶ 23    Generally, attachments to briefs not included in the record are not properly before the reviewing court and cannot be used to supplement the record. *Carroll v. Faust*, 311 Ill. App. 3d 679, 683 (2000). Yet, Illinois Supreme Court Rule 329 (Ill. S. Ct. R. 329 (eff. Jan. 1, 2006)) does allow material omissions in the record to be corrected by stipulation of the parties or "by the reviewing court or a judge thereof." Although Rule 329 allows a reviewing court to *sua sponte* correct or amend the record, our research has not revealed any Illinois decision in which this has been done. Given the circumstances of this case, we decline to be the first.

¶ 24    The State contends that Garvin's failure to litigate his as-applied constitutional challenge at the trial level is fatal to his challenge on appeal because the State was unable to present evidence on the issue of whether defendant surrendered his right to assert a second amendment claim under the Rules and Regulations agreement he signed as a condition of his probation. The State argues it would be inappropriate for this court to consider whether the statute had been constitutionally applied to Garvin's specific situation because as a reviewing court, our role is not to be fact finder. See *In re R.C.*, 195 Ill. 2d 291, 299-300 (2001) (without evidentiary record, any finding that statute is unconstitutional as applied is premature). Accordingly, the State argues that even though Garvin is correct that he may challenge the constitutionality of a statute at any time, the record must provide the proper foundation from which to address his claim. The State argues the record before us is inadequate to address Garvin's as-applied claim because the trial court, as the finder of fact, was not given the opportunity to determine whether defendant affirmatively relinquished his right to assert a second amendment claim under the Rules and Regulations agreement he signed as a condition of his probation.

¶ 25    We agree with the State that the Rules and Regulations agreement Garvin signed is relevant to his as-applied constitutional challenge to the UUWF statute; however, had the State wanted this court to consider the agreement on review, it should have moved to have the document properly included in the record on appeal. By failing to make the document a part of the record, the State has precluded our consideration of it on review. Accordingly, we address defendant's contentions without consideration of the Rules and Regulations agreement.

¶ 26                    Defendant's Facial and As-Applied Constitutional Challenges

¶ 27    In considering the merits of Garvin's facial and as-applied constitutional challenges to the UUWF statute, however, Garvin fares no better.

¶ 28    The State argues that by applying only to felons, the UUWF statute does not impose any burden on conduct falling within the scope of the second amendment. In support, the State cites *People v. Ross*, 407 Ill. App. 3d 931 (2011), and *People v. Coleman*, 409 Ill. App. 3d 869, 879 (2011). In *Ross*, the court cites with approval *United States v. Williams*, 616 F.3d 685 (7th Cir. 2010), in which the court found the need to apply intermediate scrutiny to a statute that barred felons from possessing firearms. The State argues the court's reasoning in *Ross* supports a conclusion here that the UUWF statute is constitutionally valid. The State agrees with the ultimate holding in *Ross*, but argues a different analysis is warranted,

specifically one that does not require heightened scrutiny of the statute. The State contends that Garvin's status as a felon removes him from the protections of the second amendment and, therefore, because the UUWF statute only regulates the conduct of felons, its application does not trigger the second amendment, making constitutional scrutiny at any level "unnecessary."

¶ 29 The State relies on *Wilson v. Cook County*, 407 Ill. App. 3d 759 (2011), *aff'd in part & rev'd in part*, *Wilson v. County of Cook*, 2012 IL 112026, as support for its approach. In analyzing a second amendment challenge to the Cook County ordinance prohibiting assault weapons in *Wilson*, the Illinois Supreme Court adopted a two-pronged approach to determine the constitutionality of the statute. The first part is an inquiry into whether the challenged law imposes a burden on conduct falling within the scope of the second amendment. *Wilson*, 2012 IL 112026, ¶¶ 41-42. "That inquiry involves a textual and historical inquiry to determine whether the conduct was understood to be within the scope of the right at the time of ratification." *Wilson*, 2012 IL 112026, ¶¶ 41-42 (citing *Heller*, 554 U.S. at 634-35, and *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3047). If the challenged law does not regulate conduct within the scope of the second amendment, the activity is not constitutionally protected. *Wilson*, 2012 IL 112026, ¶¶ 41-42. Where the court finds the law imposes a burden on conduct falling within the scope of the second amendment, the court proceeds to the second inquiry and determines what level of constitutional scrutiny to apply. *Wilson*, 2012 IL 112026, ¶¶ 41-42. The Seventh Circuit applied a similar two-part analysis in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), and, therefore, the State argues the same analysis should be applied in this case. We apply the same analysis as in *Wilson*.

¶ 30 The United States Supreme Court has concluded that the core of the second amendment protection was "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. The Supreme Court explained, "[a]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626. In *McDonald*, the Court was asked to determine whether the second amendment applied to the states. At issue were two municipal ordinances from Illinois: a Chicago ordinance preventing city citizens from possessing a handgun based on the prohibition of most handguns and a similar Oak Park ordinance making it "unlawful for any person to possess ... any firearm." (Internal quotation marks omitted.) *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3025. The Supreme Court struck down the ordinances holding the second amendment right is applicable to states through the due process clause of the fourteenth amendment. *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3044. In so doing, the Court cautioned, "incorporation does not imperil every law regulating firearms." *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3047.

¶ 31 Garvin argues the right to possess ammunition in the home is coextensive with the right to possess a handgun, citing *Herrington v. United States*, 6 A.3d 1237, 1243 (D.C. 2010) (reversing conviction for possessing ammunition inside of defendant's home, where prosecution did not show defendant possessed ammunition for illegal purpose). *Herrington*, though, involved a situation far removed from that here. The challenged statute in *Herrington* made it a crime to possess ammunition of any kind, anywhere, regardless of its use or

-7-

purpose. *Herrington*, 6 A.3d at 1243. The court held the statute unconstitutional as applied where the defendant's conviction under the challenged statute was based solely on proof that the defendant possessed handgun ammunition in his home, "conduct protected by the Second Amendment." *Herrington*, 6 A.3d at 1243. Significant to the court was that to prosecute Herrington, the State did not need to show he was disqualified from exercising his second amendment rights as a result of a criminal conviction. *Herrington*, 6 A.3d at 1243-44. The *Herrington* court expressed no opinion as to whether the challenged statute was unconstitutional in other applications or whether it was unconstitutional on its face. *Herrington*, 6 A.3d at 1244. In fact, the *Herrington* court explained that even though the second amendment right to keep and bears arms is presumptively enjoyed by all American citizens, "some individuals may be disqualified from exercising it because they cannot satisfy, or have not complied with, valid regulatory conditions." *Herrington*, 6 A.3d at 1242 & n.16 (quoting *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3047) (" 'We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." ' " (quoting *District of Columbia v. Heller*, 554 U.S. at 626-27)).

¶ 32   As the State points out, several jurisdictions have interpreted the *Heller* Court's approval of felon-based firearm bans as authority to reject a second amendment challenge to statutes that criminalize a felon's possession of a firearm in the home. See *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010) (rejecting defendant's argument that his conviction for possession of firearm and ammunition by a felon violated his second amendment rights); see also *United States v. Whisnant*, 391 F. App'x 426, 430 (6th Cir. 2010) ("Relying on that language from *Heller*, this Court has held [the challenged statute] comports with the Second Amendment, stating that 'prohibitions on felon possession of firearms do not violate the Second Amendment,' and 'Congress's prohibition on felon possession of firearms is constitutional.' " (quoting *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010)); see also *United States v. Feaster*, 394 F. App'x 561, 565 (11th Cir. 2010) ("Since *Heller* expressly disclaimed any erosion of the 'longstanding prohibitions on the possession of firearms by felons,' we held [in *Rozier*] that 'statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment.' " (quoting *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010))).

¶ 33   Garvin has failed to offer any decision, in any jurisdiction, finding a statute prohibiting a felon from possessing a firearm or firearm ammunition in his or her home to be unconstitutional under the second amendment. Accordingly, we hold felon-based firearm bans, including firearm ammunition, like the UUWF statute, do not impose a burden on conduct falling within the scope of the second amendment.

¶ 34   Moreover, even if we were to determine the second amendment was implicated by Garvin's conviction based on possession of firearm ammunition, we would still find the UUWF statute facially valid under the second prong of the *Wilson* inquiry. See *Wilson*, 2012 IL 112026, ¶¶ 41-42 (where court finds law to impose burden on conduct falling within scope of second amendment, court proceeds to second inquiry and determines what level of

-8-

constitutional scrutiny to apply).

¶ 35    Garvin argues that a strict scrutiny constitutional analysis applies since the case involves "the core right to keep arms inside of one's home." See *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) (strict scrutiny applies to "core" second amendment protections, while intermediate scrutiny applies to regulation that is "closer to the margins"). To satisfy strict scrutiny, the means used by the legislature must be necessary to a compelling State interest, and the statute must be narrowly tailored, using the least restrictive means possible to achieve its purpose. *In re R.C.*, 195 Ill. 2d 291, 302-03 (2001). Garvin argues the UUWF statute fails to satisfy strict scrutiny, suggesting that a "blanket prohibition against felons possessing bullets in their homes, far from any firearm" is not a necessary means to furthering a compelling State interest. Garvin contends the prohibition is not sufficiently narrowly tailored.

¶ 36    Garvin further argues that even if we were to apply intermediate scrutiny as the court did in *People v. Davis*, 408 Ill. App. 3d 747 (2011), we should find the statute violates the second amendment. Garvin argues a prohibition against the mere possession of ammunition inside an individual's own home does not rise to the level of circumstances that warrant an infringement on the individual's second amendment rights under any level of heightened scrutiny.

¶ 37    The State argues that the UUWF statute is a felon-based firearm prohibition and, as such, it does not reach the "core" protection of the second amendment and, therefore, should not be subjected to a heightened level of scrutiny. The State argues that if we are to subject the statute to any level of constitutional scrutiny, it must be rational basis scrutiny. Under rational basis scrutiny, the court must consider whether the challenged classification bears a rational relationship to a legitimate government purpose. *People v. Whitfield*, 228 Ill. 2d 502, 512 (2007).

¶ 38    Intermediate scrutiny (*People v. Ross*, 407 Ill. App. 3d 931, 939 (2011)) and rational basis scrutiny (*People v. Davis*, 405 Ill. App. 3d 585 (2010)) have been applied in upholding the armed habitual criminal (AHC) statute against a second amendment challenge. An individual commits the offense of AHC if he or she "receives, sells, possesses, or transfers any firearm" after having been convicted of two or more of the enumerated offenses. 720 ILCS 5/24-1.7(a) (West 2010).

¶ 39    We note, in applying any level of scrutiny, our analysis begins with the presumption that the statute is constitutional, and "the burden of rebutting that presumption is on the party challenging the validity of the statute to demonstrate clearly a constitutional violation." (Internal quotation marks omitted.) *Coleman*, 409 Ill. App. 3d at 877 (quoting *People v. Dinelli*, 217 Ill. 2d 387, 397 (2005)).

¶ 40    The AHC statute is similar to the UUWF statute in that it applies only to those convicted criminals who have proven themselves to be a danger to society. The AHC statute survived a heightened level of scrutiny in *Ross*, 407 Ill. App. 3d at 942, and scrutiny under rational basis review (*People v. Davis*, 405 Ill. App. 3d 585 (2010)); so too does the UUWF statute. Like the AHC statute, the UUWF statute is a valid exercise of Illinois's right to protect the health, safety, and general welfare of its citizens from the potential danger posed by

convicted felons in possession of firearms or firearm ammunition. The UUWF statute is proportional to the interest served.

¶ 41    Garvin offers no legal support in which the Supreme Court has ever suggested that a felon has the right under the second amendment to possess a firearm or firearm ammunition inside or outside a home, and the majority in *Heller* stated that " 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.' " (Emphasis omitted.) *Ross*, 407 Ill. App. 3d at 939 (quoting *Heller*, 554 U.S. at 626-27). If, as Garvin argues, the right to possess ammunition is coextensive with the right to possess a firearm (*Herrington*, 6 A.3d at 1243), then it logically follows that the State's acknowledged right to prohibit the possession of firearms by felons is coextensive with its ability to prohibit felons from possessing firearm ammunition as well.

¶ 42                                    CONCLUSION

¶ 43    Keeping bullets out of the hands of those who also may not possess a firearm is well within the law under the constitution. We reject Garvin's constitutional claim and affirm his conviction under the UUWF statute.

¶ 44    Affirmed.