# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Black*, 2012 IL App (1st) 110055

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICKEY BLACK, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-11-0055 |
| Filed | July 31, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The armed habitual criminal statute does not violate the constitutional right to bear arms or the prohibition against *ex post facto* laws. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-20278; the Hon. Thomas V. Gainer, Jr., Judge, presiding. |
| Judgment | Affirmed as modified. |

| | |
|---|---|
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Stephen L. Gentry, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Marie Quinlivan Czech, and Margaret G. Lustig, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Cunningham and Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant, Rickey Black, appeals his conviction after a bench trial of being an armed habitual criminal and his sentence of seven years' imprisonment. On appeal, he contends (1) the statute that makes being an armed habitual criminal a criminal offense violates his constitutional right to bear arms; (2) his conviction violates the *ex post facto* clauses of the Illinois and United States Constitutions because one of his qualifying offenses occurred before the effective date of the armed habitual criminal statute; and (3) his fines, fees, and costs should be reduced by $335. For the reasons that follow, we affirm Black's conviction and sentence but reduce the fines, fees, and costs assessed to him by $335.

¶ 2                                JURISDICTION

¶ 3     The trial court sentenced Black on December 2, 2010, and he filed a timely notice of appeal on December 2, 2010. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009).

¶ 4                                BACKGROUND

¶ 5     Black was charged with being an armed habitual criminal. At his bench trial, Sergeant Don Markham testified that on October 17, 2009, approximately 20 officers from the Chicago police department narcotics squad went to an apartment at 8739 S. Racine to execute a search warrant. Officers knocked on the door and announced "Chicago police–search warrant." They heard running on the other side of the door and Officer Gutkowski used a ram to force entry into the apartment. Black and three other people were in the apartment. Upon entry, Officers Markham and Gutkowski saw Black holding a bluesteel handgun as he ran into a bedroom. Officer Markham yelled "gun" and he followed

Black into the bedroom. He then observed Black throw the gun through the window. Officer Gutkowski ran outside and recovered the gun near some broken glass. He also found a magazine containing ammunition nearby. Black was placed under arrest.

¶ 6    The officers proceeded to search the apartment. On a coffee table in the bedroom they found a clear knotted plastic baggie containing nine smaller bags of suspected crack cocaine, two bundles of money, and a February Comcast bill in Black's name. The parties stipulated as to the chemical composition of the substance found in the baggies. The State also presented certified copies of Black's prior convictions for aggravated robbery to which Black pled guilty on August 16, 1999, and for unlawful use of a weapon by a felon to which Black pled guilty on June 26, 2006.

¶ 7    Martin McFarland testified for the defense. He stated he and Black were watching television when he heard a "big boom." Officers came into the room and ordered him and Black to the ground. Officers handcuffed them. McFarland testified that his daughter lived in the apartment with her mother, aunt, and grandmother. Black would visit but he was unsure whether Black stayed in the apartment. He stated that he did not see Black run or throw anything out of the window.

¶ 8    The trial court found Black guilty of one count of being an armed habitual criminal and two counts of unlawful use of a weapon. The trial court merged the unlawful use of a weapon charges into the armed habitual criminal charge and sentenced Black to seven years' imprisonment. The court also assessed Black $660 in fines, fees, and costs. Black filed this timely appeal.

¶ 9                                                    ANALYSIS

¶ 10    Black contends that his armed habitual criminal conviction based on his possession of a handgun violates the second amendment right to bear arms. Section 24-1.7(a) of the Criminal Code of 1961 states:

"(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:

(1) a forcible felony as defined in Section 2-8 of this Code;

(2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm; or

(3) any violation of the Illinois Controlled Substances Act or the Cannibis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a) (West 2006).

Black did not raise this issue before the trial court. However, a party may challenge the constitutionality of a statute at any time. *People v. Bryant*, 128 Ill. 2d 448, 454 (1989). We review a constitutional challenge to a statute *de novo*. *People v. Dinelli*, 217 Ill. 2d 387, 397 (2005).

¶ 11 The second amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *Wilson v. County of Cook*, 2012 IL 112026, our supreme court discussed the right to keep and bear arms as recognized by the United States Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008). *Heller* reasoned that the central component of this second amendment right is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. Our supreme court noted, however, that this right "is not without limitations." *Wilson*, 2012 IL 112026, ¶ 37. Notably, *Heller* made clear that individuals do not have the right to carry any weapon in any manner for any purpose, and therefore limitations on the carrying of dangerous or unusual weapons may be upheld as constitutional. *Id*. Also, " 'prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms' " are presumptively lawful. *Id.* ¶ 38 (quoting *Heller*, 554 U.S. at 626-27). The Court in *McDonald v. City of Chicago*, 561 U.S. ___ , ___, 130 S. Ct. 3020, 3050 (2010), reaffirmed *Heller's* holding "that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense," and held that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*." In *McDonald*, the Court reiterated its position in *Heller* that "prohibitions on the possession of firearms by felons and the mentally ill" are lawful. (Internal quotation marks omitted.) *Id.* at ___, 130 S. Ct. at 3047.

¶ 12 Although the Supreme Court did not specify the standard of scrutiny courts should apply when addressing second amendment challenges, it did reject a rational basis standard of review. See *Wilson*, 2012 IL 112026, ¶ 42. Accordingly, our appellate courts have applied an intermediate scrutiny standard in determining whether a statute violates the second amendment right to keep and bear arms. See *People v. Ross*, 407 Ill. App. 3d 931, 939 (2011); *People v. Aguilar*, 408 Ill. App. 3d 136, 146 (2011); *People v. Mimes*, 2011 IL App (1st) 082747, ¶ 74. Intermediate scrutiny review determines whether the challenged statute serves a significant, substantial, or important government interest and, if so, whether there is a reasonable fit between the statute and the governmental interest. *Mimes*, 2011 IL App (1st) 082747, ¶ 74. Reasonable fit does not necessarily mean perfect fit, but rather it is the "[fit] whose scope is 'in proportion to the interest served.' " (Internal quotation marks omitted.) *Mimes*, 2011 IL App (1st) 082747, ¶ 74 (quoting *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989)).

¶ 13 This court in *Ross* addressed the very issue before us: whether the armed habitual criminal statute violates the second amendment right to keep and bear arms. It applied intermediate scrutiny analysis and noted, as we have discussed, that *Heller* and *McDonald* found prohibitions on the possession of firearms by felons to be lawful regulatory measures used by the government to promote the health, safety, and general welfare of its citizens. *Ross*, 407 Ill. App. 3d at 942. The armed habitual criminal statute reflects the State's "legitimate interest in preventing the danger associated with repeat felons having firearms." *People v. Davis*, 405 Ill. App. 3d 585, 592 (2010). *Ross* concluded that the statute "serves a substantial governmental interest and is proportional to the interest served." *Ross*, 407 Ill.

App. 3d at 942. We agree with the determination in *Ross* and find that the armed habitual criminal statute does not violate Black's second amendment rights.

¶ 14 Black contends that this court should not rely on *Heller*'s and *McDonald*'s statements about lawfully prohibiting felons from possessing firearms because they were *dicta* and not necessary to the disposition of either case. However, judicial *dicta*, which involve an issue briefed and argued by the parties, "have the force of a determination by a reviewing court and should receive dispositive weight in an inferior court." *People v. Williams*, 204 Ill. 2d 191, 206 (2003). The Supreme Court stated in *Heller* that statutes prohibiting felons from possessing firearms are presumptively lawful, and it emphasized the significance of the statement by repeating it in *McDonald*. We do not agree with Black's contention that the statement was nothing more than an "off-hand" reference that should not be followed. See also *People v. Davis*, 408 Ill. App. 3d 747, 750 (2011) (in reviewing a constitutional challenge to the armed habitual criminal statute, the court found support in the *dicta* in *Heller*).

¶ 15 Black also argues that his conviction violates the *ex post facto* clauses of the Illinois and United States Constitutions because one of his qualifying offenses occurred before the effective date of the armed habitual criminal statute. Black committed the offense of armed habitual criminal on October 17, 2009, by possessing a firearm. The State presented certified copies of his convictions for the qualifying offenses of aggravated robbery to which Black pled guilty on August 16, 1999, and for unlawful use of a weapon by a felon to which he pled guilty on June 26, 2006. Black contends that application of the armed habitual criminal statute to him violates the prohibition against *ex post facto* laws since his prior conviction for aggravated robbery, which occurred before the enactment of the statute, was an element of the armed habitual criminal offense.

¶ 16 "An *ex post facto* law is one that (1) makes criminal and punishable an act innocent when done; (2) aggravates a crime, or makes it greater than it was when committed; (3) increases the punishment for a crime and applies the increases to crimes committed before the enactment of the law; or (4) alters the rules of evidence to require less or different evidence than required when the crime was committed." *People v. Leonard*, 391 Ill. App. 3d 926, 931 (2009). The prohibition against *ex post facto* laws stems from "a person's right to have fair warning of conduct giving rise to criminal penalties and punishment." *Leonard*, 391 Ill. App. 3d at 931.

¶ 17 In *Leonard*, the defendant was convicted of the offense of armed habitual criminal for possessing a firearm after having previously been convicted of three qualifying offenses committed between 1998 and 2004. *Leonard*, 391 Ill. App. 3d at 927. Like Black, he argued that the armed habitual criminal statute violated the provision against *ex post facto* laws because his prior convictions were used as elements of the offense even though they occurred before the enactment of the statute. *Leonard*, 391 Ill. App. 3d at 930. The court found no *ex post facto* violation, holding that the armed habitual criminal statute did not punish the defendant for offenses he committed before the statute was enacted, but instead punished him for "the new act of possessing a firearm." *Leonard*, 391 Ill. App. 3d at 932. Furthermore, he had fair warning at the time he possessed the firearm "that, in combination with his prior convictions, he was committing the offense of armed habitual criminal." *Leonard*, 391 Ill.

App. 3d at 931-32.

¶ 18    In *People v. Bailey*, 396 Ill. App. 3d 459, 463 (2009), the court cited approvingly to *Leonard*'s holding and analysis. The defendant was convicted under the armed habitual criminal statute for possessing firearms in 2006 after having previously been convicted of two qualifying offenses in 1997. *Bailey*, 396 Ill. App. 3d at 461. He contended that the armed habitual criminal statute violated the provision against *ex post facto* laws because his prior convictions occurred before the enactment of the statute. *Bailey*, 396 Ill. App. 3d at 461-62. Citing to *Leonard*, the court in *Bailey* held that the statute "created a substantive offense that punishes a defendant, not for his earlier convictions, but for the new offense created therein." *Bailey*, 396 Ill. App. 3d at 464. Accordingly, the court held that the armed habitual criminal statute did not violate *ex post facto* prohibitions. *Bailey*, 396 Ill. App. 3d at 464.

¶ 19    The effective date of the armed habitual criminal statute was August 2, 2005. Black's possession of a firearm occurred on October 17, 2009, after the effective date of the armed habitual criminal statute. Therefore, he had fair warning that, in combination with his prior convictions for aggravated robbery and unlawful use of a weapon by a felon, he was committing the offense of armed habitual criminal. We agree with the well-reasoned decisions in *Leonard* and *Bailey* and hold that the armed habitual criminal statute does not violate constitutional prohibitions against *ex post facto* legislation.

¶ 20    Black argues that this court should disregard *Leonard* and *Bailey* as cases decided in contravention of *People v. Dunigan*, 165 Ill. 2d 235 (1995), and *People v. Levin*, 157 Ill. 2d 138 (1993). He argues that the supreme court in *Dunigan* and *Levin* upheld the constitutionality of a different statute, the Habitual Criminal Act (the Act) (Ill. Rev. Stat. 1989, ch. 38, ¶ 33B-1 (repealed by Pub. Act 95-1052, § 93 (eff. July 1, 2009))), because prior convictions under that statute were used as sentencing factors only, and did not constitute elements of a new substantive offense. If the statute had considered the prior convictions as elements of a new offense, Black contends, the supreme court would have found an *ex post facto* violation.

¶ 21    We are not persuaded by this argument. Unlike the armed habitual criminal statute here, the Habitual Criminal Act at issue in *Dunigan* and *Levin* dealt only with sentencing. The Act "mandates the imposition of a natural-life sentence on a defendant convicted of three temporally separate Class X offenses *** within a 20-year period." *People v. Palmer*, 218 Ill. 2d 148, 154-55 (2006), *overruled on other grounds by People v. Petrenko*, 237 Ill. 2d 490 (2010). The supreme court in *Dunigan* and *Levin* responded to the defendants' argument that the Act improperly mandated a life sentence as punishment for all the felony offenses, including the ones for which they had already been convicted, and as such created a new substantive criminal offense. *Dunigan*, 165 Ill. 2d at 241-42; *Levin*, 157 Ill. 2d at 149. The supreme court disagreed with the defendants' argument, stating:

"The punishment imposed under the Act is for the most recent offense only. The penalty is made heavier because the person convicted is a habitual criminal. The Act does not punish a defendant again for his prior felony convictions, nor are those convictions elements of the most recent felony offense. Instead, they simply aggravate or enhance the penalty imposed for the third and most recent offense." *Dunigan*, 165 Ill. 2d at 242.

¶ 22 The decisions in *Dunigan* and *Levin* do not expressly prohibit the use of prior convictions as elements of an offense in all habitual criminal legislation. Instead, "they merely indicated that the statute in question in those cases was a sentencing enhancement, not a substantive offense. [Citations.] In contrast, the armed habitual criminal statute [at issue here] *** creates a substantive offense which punishes a defendant, not for his or her earlier convictions, but for the new offense." *Leonard*, 391 Ill. App. 3d at 932. We agree with the reasoning of the *Leonard* and *Bailey* courts, and find Black's argument unavailing.

¶ 23 Black's final contention is that the trial court erroneously assessed to him fines, fees, and costs of $335. Specifically, Black challenges $200 for the State DNA identification system, $100 for the trauma fund, and a $5 court system fee. He also alleges that the trial court failed to credit him for time served prior to sentencing against the $30 Children's Advocacy Center assessment, which is a fine subject to such credit. The State agrees with Black that his fines, fees, and costs should be reduced by $335.

¶ 24 For the foregoing reasons, we affirm Black's conviction and sentence but modify the judgment of the circuit court to reduce the fines, fees, and costs assessed to Black by $335.

¶ 25 Affirmed as modified.