FIRST DIVISION
May 9, 2016

No. 1-14-2143
2016 IL App (1st) 142143

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| | ) | Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 13 CR 3425 |
| | ) | |
| JAMES MONTGOMERY, | ) | |
| | ) | Honorable Evelyn B. Clay, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    After a bench trial, defendant, James Montgomery, was found guilty of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2012)), and unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2012)), after police seized guns and ammunition at defendant's home during the execution of a search warrant.  The court sentenced defendant to two  concurrent seven-year sentences.  On appeal, defendant argues that the AHC and UUWF statutes are unconstitutional because they infringe on his second amendment right to bear arms in self-defense.  U.S. Const., amend. II.  For the following reasons, we affirm.

¶ 2                                BACKGROUND

¶ 3    Defendant was charged with three counts of being an armed habitual criminal for possessing a 9-millimeter semiautomatic handgun, a .45-caliber semiautomatic handgun, and a revolver, after having been previously convicted of possession of a controlled substance and delivery of a controlled substance.  Defendant was also charged with four counts of UUWF for possessing the three above-listed firearms and ammunition, after having been previously convicted of possession of a controlled substance.

¶ 4    During defendant's bench trial on May 14, 2014, the State called Officer Kevin Killen to testify.  Officer Killen testified that on January 31, 2013, at approximately 2 p.m., he and fellow officers executed a search warrant at defendant's home, a two-story apartment building located at 4942 South Laflin Street in Chicago.  Defendant was at his home at the time the search warrant was executed.  Officer Killen testified that he first encountered defendant in the kitchen and when asked if he had anything illegal in the house, defendant told Officer Killen that he had three handguns for protection in the attic under an electrical box.  Officer Killen and two other officers, officers Del Toro and Coranza, then went to the attic and retrieved the three guns.  Officer Killen further testified that he was four to five feet away from Officer Del Toro when he observed him recover a .45-semiautomatic handgun containing 6 live rounds, a 7.62-caliber revolver containing 7 live rounds and a 9-millimeter semiautomatic Glock containing 10 live rounds.  Officer Killen stated that a bag containing 20 live rounds was also recovered from the attic.  In addition to the guns and ammunition, the officers also recovered pieces of mail addressed to defendant at the Laflin address where they were executing the search warrant.  Officer Killen testified that after the aforementioned recoveries were made, he read defendant his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)) from a preprinted form and defendant

stated that he found the .45-caliber handgun, his brother gave him the revolver, and he was holding the Glock for someone who was in prison.

¶ 5    Another officer who was present at the execution of the search warrant, Officer Movzelewski, also testified on behalf of the State. Officer Movzelewski testified that while in defendant's kitchen, he conducted a pat-down search of defendant and recovered keys that opened the doors of defendant's apartment. The State also called Officer Bernson, who testified that while executing the search warrant at defendant's home on January 31, 2013, he recovered a box of ammunition from the front bedroom of defendant's apartment.

¶ 6    The defense rested without presenting any evidence. The trial court found defendant guilty on all counts. On June 18, 2014, the court merged all of the UUWF counts into one count and all of the AHC counts into one count, and sentenced defendant to two concurrent seven-year prison terms. Defendant filed his notice of appeal on June 25, 2014.

¶ 7                                    ANALYSIS

¶ 8    On appeal, defendant contends that his convictions pursuant to the AHC statute (720 ILCS 5/24-1.7(a) (West 2012)) and the UUWF statute (720 ILCS 5/24-1.1(a) (West 2012)) must be vacated because those statutes are facially unconstitutional. Defendant argues that the two statutes violate the second amendment's right to bear arms for self-defense. U.S. Const., amend. II ("A well regulated [m]ilitia, being necessary to the security of a free [s]tate, the right of the people to keep and bear [a]rms, shall not be infringed."). Defendant further argues that these statutes are unconstitutional as applied to him because his prior felony convictions were nonviolent and he kept the guns for protection.

¶ 9    Defendant did not raise this issue below, but a constitutional challenge to a statute can be raised at any time. *In re J.W.*, 204 Ill. 2d 50, 61 (2003). All statutes are presumed to be

3

constitutional and the burden for rebutting that presumption is on the party challenging the validity of the statute to demonstrate clearly a constitutional violation. *People v. Rush*, 2014 IL App (1st) 123462, ¶ 10. Our review of the constitutionality of a statute is *de novo*. *People v. Campbell*, 2014 IL App (1st) 112926, ¶ 54.

¶ 10    The AHC statute makes it a Class X felony for a person to possess a firearm after having been twice convicted of certain offenses. 720 ILCS 5/24-1.7(b) (West 2012). The UUWF statute criminalizes the possession of a handgun in one's own home if that person has previously been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2012).

¶ 11    Defendant contends that the UUWF and AHC statutes are facially unconstitutional because they infringe on his second amendment rights by criminalizing the possession of a firearm kept for self-defense in one's own home. A facial challenge to a statute must show the statute is incapable of constitutional application in any context. *People v. Garvin*, 2013 IL App (1st) 113095, ¶ 16. "[A] facial challenge is an exceedingly formidable challenge-to prevail, the defendant must show there are no set of circumstances under which the law would be valid." *Id.*

¶ 12    Defendant also argues that the UUWF and AHC statutes are unconstitutional as applied to him. An as-applied challenge stems from a defendant's argument that the application of the statute to the defendant's particular situation is unconstitutional. *Id.* ¶ 17. The facts surrounding the defendant's particular case are only relevant to an as-applied challenge. *Id.*

¶ 13    In response, the State argues that defendant's contentions are without merit because defendant ignores the well-settled precedent that supports the constitutionality of these statutes. Specifically, the State contends that these statutes are constitutional because they merely prohibit the possession of firearms by convicted felons, a prohibition this court has consistently upheld. Additionally, the State asserts that neither statute implicates the second amendment. We agree.

¶ 14    Defendant's position has no merit in light of decisions by the United States Supreme Court, the Illinois Supreme Court, and the Illinois Appellate Court.  In *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), the Supreme Court held that the second amendment guarantees an individual the right to keep and bear arms, the central component of that right being the right of armed self-defense, particularly in one's own home, and that a ban on possession of a firearm in one's home violates the second amendment.  However, the *Heller* Court also recognized that "[l]ike most rights, the right secured by the [s]econd [a]mendment is not unlimited."  *Id.* at 626. "[T]he right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Id.*  As a result, the Supreme Court noted that its decision does not cast doubt on the longstanding prohibitions on, *inter alia*, the possession of firearms by felons. *Id.* at 626-27; see also *McDonald v. City of Chicago, Illinois*, 561 U.S. 742, 786 (2010) (repeating its assurances in *Heller* that its decision "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.' "(quoting *Heller*, 554 U.S. at 626)).  Defendant contends that we should not rely on these findings because they are merely *dicta*.  However, "judicial *dicta* should usually carry dispositive weight in an inferior court."  *People v. Robinson*, 2011 IL App (1st) 100078, ¶ 25.  Thus, we follow the *dicta* set forth in *Heller* and *McDonald* as this court has consistently done in the past.  See, *e.g.*, *Campbell*, 2014 IL App (1st) 112926, ¶ 4; *Robinson*, 2011 IL App (1st) 100078, ¶ 25.

¶ 15    Contrary to defendant's position that the issues of this case have not been addressed by the Illinois Supreme Court, our supreme court expressed its approval of felon-based bans on firearm possession in *People v. Aguilar*, 2013 IL 112116, ¶ 26 (quoting and accepting *Heller*'s recognition that nothing in its decision should be taken to cast doubt on the prohibition on the possession of firearms by felons (quoting *Heller*, 554 U.S. at 626-27)).  See also *People v. Burns*,

2013 IL App (1st) 120929, ¶ 27 (concluding that, in light of *Heller* and *Aguilar*, "the possession of firearms by felons is conduct that falls outside the scope of the second amendment's protection").

¶ 16    Both before and after the supreme court's decision in *Aguilar*, relying on *Heller*'s reasoning that the second amendment does not prohibit regulation on the possession of firearms by felons, this court has consistently rejected constitutional challenges to the statutes at issue here.  See, *e.g.*, *People v. Rush*, 2014 IL App (1st) 123462, ¶¶ 24-25 (recognizing that the UUWF statute has been consistently upheld as constitutional following *Aguilar* and holding that the UUWF statute is not unconstitutional under the second amendment); *Campbell*, 2014 IL App (1st) 112926, ¶ 60 (holding "felon-based firearm bans, like the UUWF and AHC statutes, do not impose a burden on conduct falling within the scope of the second amendment"); *Garvin*, 2013 IL App (1st) 113095, ¶ 40 (finding the UUWF statute, like the AHC statute, is a valid exercise of Illinois's right to protect the health, safety, and general welfare of its citizens of the potential danger posed by convicted felons in possession of firearms or firearm ammunition); *People v. Black*, 2012 IL App (1st) 110055, ¶ 13 (holding AHC statute could prohibit defendant felon from possessing firearm in own home); *Robinson*, 2011 IL App (1st) 100078, ¶ 26 (determining that "the mere fact that the handgun defendant possessed in this case was recovered from inside his own home does not warrant departing from our previous decisions finding the [UUWF statute] constitutional"); and *People v. Ross*, 407 Ill. App. 3d 931, 942 (2011) (holding the AHC statute is a constitutionally permissible restriction of the second amendment right to bear arms). We find no reason to depart from these holdings.

¶ 17    Although the second amendment does not categorically exclude felons from its protection, this court has found that laws prohibiting felons from possessing firearms does no run

afoul of the second amendment. Thus, we find unconvincing defendant's reliance on *People v. Davis*, 408 Ill. App. 3d 747 (2011). In *Davis*, the defendant made facial and as-applied constitutional challenges to the UUWF and AHC statutes. *Id.* at 749. During its analysis, the *Davis* court recognized that the defendant, although a felon, still "count[ed] as one of the people whose rights the Constitution protects," thus the court determined it must apply intermediate scrutiny to determine whether the UUWF and AHC statutes violated the second amendment. *Id.* Ultimately, the court found both statutes to be constitutional on their face and as applied to the defendant. *Id.* at 750-51. The court, relying on the Supreme Court's *dicta* in *Heller* and *McDonald* that "[n]othing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," found that the UUWF and AHC statutes were not facially unconstitutional. (Internal quotation marks omitted.) *Id.* at 750. The *Davis* court also rejected the defendant's as-applied challenge, and found that contrary to the defendant's argument that the State failed to prove that he intended to use the firearms for an improper purpose, neither statute required such a showing. *Id.*

¶ 18    Here, we recognize that although the *Davis* court stated that the defendant there could not be categorically excluded from the protection of the second amendment due to his status as a felon, this court has disagreed with such a blanket proposition in other cases. See, *e.g.*, *Garvin*, 2013 IL App (1st) 113095, ¶ 2 (stating that "[a]s a convicted felon, defendant's second amendment rights may be constitutionally abridged"). Therefore, even assuming *arguendo* that defendant's rights were not abridged due to his status as a felon, the *Davis* case still does not support defendant's argument that the statutes at issue here are unconstitutional in any manner. It seems the *Davis* court's recognition that a defendant felon may still be awarded the protection of the second amendment merely signified that it believed a reviewing court should undertake a

constitutional analysis based on intermediate scrutiny rather than rational basis review. *Davis*, 408 Ill. App. 3d at 749. In *Garvin*, this court looked at its previous decision in *Davis* and determined that under either rational basis review or intermediate scrutiny, the UUWF and AHC statutes are constitutional. *Garvin*, 2013 IL App (1st) 113095, ¶ 40. As a result, in our analysis here, we follow *Garvin* and this court's well-reasoned prior decisions that have applied both intermediate scrutiny and rational basis test, and find no reason to stray from the determination that the UUWF and AHC statutes are not unconstitutional. See *supra* ¶ 17.

¶ 19     As a final matter, we reject defendant's argument that the UUWF statute is unconstitutional as applied to him because his prior felonies were nonviolent. Defendant's as-applied challenge fails where the UUWF statute does not provide any exceptions for persons convicted of nonviolent felonies. 720 ILCS 5/24-1.1(a) (West 2012); *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 32. Further, no such exception was recognized by the Supreme Court in *Heller* and *McDonald*. See *Spencer*, 2012 IL App (1st) 102094, ¶ 32 (finding even if the defendant had made a procedurally proper as-applied constitutional challenge to the UUWF statute, the court would still reject his claims where the UUWF statute does not include an exception for persons convicted of nonviolent felonies and neither *Heller* nor *McDonald* recognized such an exception). In line with *Spencer*, we find that the UUWF statute is not unconstitutional as applied to defendant even though his previous felonies were nonviolent.

¶ 20     "No appellate court in any jurisdiction has ruled unconstitutional a statute prohibiting a felon from possessing a firearm or firearm ammunition in his or her home." *Campbell*, 2014 IL App (1st) 112926, ¶ 60. We follow this long line of well-reasoned precedent and reject defendant's constitutional challenge to the UUWF and AHC statutes. We hold that these statutes do not violate the second amendment on their face or as applied to defendant.

¶ 21                                CONCLUSION

¶ 22    Based on the foregoing, the AHC and UUWF statutes are not unconstitutional on their

face or as applied to defendant.  Therefore, we affirm the judgment of the circuit court.

¶ 23    Affirmed.