# Illinois Official Reports

## Appellate Court

---

*People v. Martin*, 2018 IL App (1st) 152249

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERICK MARTIN, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-2249 |
| Filed | June 22, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-9003; the Hon. Thomas M. Davy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Jonathan Yeasting, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and John E. Nowak, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion.<br>Justices Lampkin and Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant Erick Martin was convicted of (1) armed habitual criminal, (2) unlawful use of a weapon by a felon, and (3) six counts of aggravated unlawful use of a weapon. These convictions were merged into the single offense of armed habitual criminal, and the trial court imposed the minimum six-year term of imprisonment. Defendant's sole contention on appeal is that the armed habitual criminal statute is unconstitutional as applied to him, where his underlying felony offenses were nonviolent and more than 20 years old. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 2                                   BACKGROUND

¶ 3    Defendant was charged with multiple offenses including armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2012)), unlawful use of a weapon by a felon (*id.* § 24-1.1(a)) and six counts of aggravated unlawful use of a weapon (*id.* §§ 24-1.6(a)(1), (3)(A), (C); 24-1.6(a)(2), (3)(C)) based, in part, on his possession of a .357 blue steel revolver without a firearm owner's identification (FOID) card. Defendant waived his right to a jury and elected to proceed by way of a bench trial.

¶ 4    At trial, two officers, Steve Jarosz and Ryan Harty of the Chicago Police Department, testified regarding their interaction with defendant and their recovery of a blue steel .357 revolver on April 24, 2013. According to Jarosz, while on patrol they observed defendant's vehicle turn into an alley without using a turn signal. Jarosz activated the siren and followed the vehicle into the alley, but the vehicle did not stop. The vehicle continued to travel through the alley, during which time Jarosz observed the driver open the driver's side door and drop a handgun onto the ground. Harty also observed the driver drop an object outside of the driver's side door, but he was unable to discern what the object was. The vehicle later stopped at the end of the alley, and defendant was removed from the driver's side of the vehicle. Jarosz recovered the handgun from where he had observed it fall. The handgun was loaded with six live rounds of ammunition. Jarosz further testified that defendant did not have a FOID card. A certified copy of a firearm service bureau report was entered into evidence which revealed that defendant did not possess a FOID card.

¶ 5    Certified copies of defendant's two prior felony convictions—a 1989 manufacture/ delivery of a controlled substance offense and a 1992 unlawful use of a weapon by a felon offense—were entered into the record without objection.

¶ 6    Defendant testified that he was not in possession of a firearm that evening nor did he open his vehicle door while driving through the alley. According to defendant, after he was stopped by the officers he waited for 30 minutes while one of the officers walked down the alley and returned with a handgun and asked if it was his weapon. Defendant informed the officers at that time that it was not his weapon.

¶ 7    After considering the evidence presented, the trial court indicated it found the officers to be credible and thus found defendant guilty on all counts. The counts were then merged into a single armed habitual criminal conviction. At the sentencing hearing, defendant presented evidence in mitigation that he was employed, participated in church, volunteered as a disc jockey for neighborhood events, and had no criminal convictions since 1992. The trial court also reviewed defendant's presentence investigation report. This report indicated that

defendant had been convicted of five felonies between 1989 and 1992. However, after 1992 defendant earned a vending machine operator's license, was employed at a mailing company, and then for the last 25 years worked as an independent professional disc jockey earning $3200 a week. The presentence investigation report further indicated that defendant had a "great" relationship with his family and provided financial support to his 18-year-old son. After hearing evidence offered in aggravation and mitigation, the trial court sentenced defendant to the minimum six years' imprisonment for the Class X offense of armed habitual criminal. This appeal followed.

¶ 8                                                    ANALYSIS

¶ 9        Defendant's sole contention on appeal is that the Illinois armed habitual criminal statute is unconstitutional as applied to him because the statute's application to him was triggered by nonviolent offenses that were more than 20 years old. Defendant asserts that the statute violates his second amendment right to possess a firearm. U.S. Const., amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.").[1] Defendant does not challenge the sufficiency of the evidence.

¶ 10       In response, the State maintains that defendant's as-applied challenge fails both procedurally and substantively. The State asserts that the challenge fails procedurally because he did not raise the issue in the trial court and therefore there was no evidentiary hearing and no findings of fact regarding his as-applied challenge. Substantively, the State maintains that defendant's as-applied challenge fails because he has not established that his conduct was entitled to second amendment protection where he chose to possess a firearm knowing that his prior felony convictions had not been vacated or otherwise set aside. The State maintains defendant was not a "law abiding, responsible citizen" protected by the second amendment.

¶ 11       As relevant here, an individual commits the offense of armed habitual criminal when he or she

> "receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:
>        ***
>        (2) unlawful use of a weapon by a felon; ***
>        (3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a) (West 2012).

An as-applied challenge arises from a defendant's contention that the statute or law as it is applied to his particular situation is unconstitutional. *People v. Campbell*, 2014 IL App (1st) 112926, ¶ 57. The facts that surround a defendant's particular circumstances are relevant to an as-applied challenge. *Id.* We review *de novo* whether the armed habitual criminal statute under section 24-1.7 of the Criminal Code of 2012 (720 ILCS 5/1-1 *et seq.* (West 2012)), as applied to the defendant, was unconstitutional under the second amendment of the United States

---

[1]During oral argument, defense counsel declined to argue an as-applied challenge under our Illinois Constitution, indicating the main thrust of his argument was in regards to the federal second amendment.

Constitution. See *People v. Robinson*, 2011 IL App (1st) 100078, ¶ 12*; see also* U.S. Const., amend. II.

¶ 12    We first address the State's contention that defendant's as-applied challenge fails procedurally due to a lack of an evidentiary hearing below. We decline to find the issue procedurally defaulted. We recognize that in *People v. McFadden*, 2016 IL 117424, ¶ 36, and *People v. Mosley*, 2015 IL 115872, ¶ 47, our supreme court declined to consider as-applied challenges that were raised for the first time on appeal. In so concluding, the *Mosley* court stated that

> "A court is not capable of making an as applied determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional as applied is premature. [Citation.] Nor would it be appropriate for this court, *sua sponte*, to consider whether [a] statute has been constitutionally applied since we, as a reviewing court, are not arbiters of the facts." (Internal quotation marks omitted.) *Id.*

Our supreme court, however, has also held that where the evidentiary record developed below is sufficient, the constitutionality of a statute may be challenged on appeal. *People v. Holman*, 2017 IL 120655, ¶ 32; see *People v. Gray*, 2017 IL 120958, ¶¶ 55-67 (considering an as-applied constitutional challenge raised for the first time on appeal); *Robinson*, 2011 IL App (1st) 100078, ¶¶ 12, 17, 29 (considering facial and as-applied constitutional challenges that were raised for the first time on appeal).

¶ 13    On appeal, defendant's as-applied challenge is based on facts already in the record, *i.e.*, the age and nature of his felony convictions and his alleged rehabilitation since his last conviction. In the prosecution of defendant's current offenses, evidence was presented at trial as to defendant's possession of the firearm and his two prior felony convictions. Other relevant facts, such as defendant's age at the time of his prior felonies and his lack of criminal history after 1992 as well as his employment history, were presented during the sentencing hearing and in the court-ordered presentence investigation report. We fail to see what further facts would be necessary to adduce at an evidentiary hearing, and notably, the State fails to identify any additional facts not in the record that would preclude our review of this issue. Accordingly, we conclude that defendant's as-applied challenge to the armed habitual criminal statute is reviewable on appeal. See, *e.g.*, *Gray*, 2017 IL 120958, ¶¶ 55-67; *Robinson*, 2011 IL App (1st) 100078, ¶¶ 12, 17, 29.

¶ 14    Turning to the merits, while our supreme court has not expressly addressed the appropriate analysis of an as-applied challenge to the armed habitual criminal statute in circumstances such as this, we find the recent decision of *People v. Chairez*, 2018 IL 121417, to be instructive. In that case, our supreme court considered the constitutionality of section 24-1(a)(4), (c)(1.5) of the unlawful use of a weapon statute (UUW) (720 ILCS 5/24-1(a)(4), (c)(1.5) (West 2012)), which, in pertinent part, prohibits an individual from carrying or possessing a firearm within 1000 feet of a public park. *Chairez*, 2018 IL 121417, ¶ 1. The defendant raised a facial challenge to this subsection of the UUW statute, arguing that an individual who is barred from carrying a firearm within 1000 feet of many locations listed in section 24-1(c)(1.5) of the UUW statute is essentially barred from carrying a firearm in public, and it is thus more closely akin to a blanket prohibition than a restriction on carrying a weapon in certain sensitive places. *Id.* ¶ 6. In examining the facial constitutionality of the statute, our supreme court set forth a two-part test:

- 4 -

"First, we conduct a textual and historical analysis of the second amendment 'to determine whether the challenged law imposes a burden on conduct that was understood to be within the scope of the second amendment's protection at the time of ratification.' [Citation.] If the conduct falls outside of the scope of the second amendment, then the regulated activity is 'categorically unprotected,' and the law is not subject to further second amendment review. [Citation.] But if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected, then we apply the appropriate level of heightened means-ends scrutiny and consider the strength of the government's justification for restricting or regulating the exercise of second amendment rights. [Citation.]" *Id.* ¶ 21.

Accordingly, we first turn to consider whether the armed habitual criminal statute under these circumstances imposes a burden on conduct that was historically understood to be within the scope of the second amendment's protection at the time of ratification. *Id.* In other words, we examine whether the offense of armed habitual criminal as applied to defendant "impermissibly encroaches on conduct at the core of the second amendment." *Id.* ¶ 26.

¶ 15    In regard to the first step, defendant asserts that at the time of ratification of the second amendment there were no regulations prohibiting felons, particularly nonviolent ones, from possessing firearms and maintains that such regulations were not in existence until 150 years after ratification. With this in mind, defendant, citing *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), maintains that "the mere fact that he has long-past convictions does not mean that he is not one of Illinois's 'law-abiding, responsible citizens' today."

¶ 16    In *Heller*, the Supreme Court briefly discussed the historical implications of the second amendment, observing that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. The Court further stated that, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. The Court repeated its assurances in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), stating, "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.' " *Id.* at 786 (quoting *Heller*, 554 U.S. at 626-27).

¶ 17    The concept that the right to bear arms under the second amendment is not unlimited, particularly in regards to felons, has been reiterated by our supreme court in *People v. Aguilar*, 2013 IL 112116, ¶ 26, *People v. Burns*, 2015 IL 117387, ¶ 29, *McFadden*, 2016 IL 117424, ¶ 35, and most recently in *Chairez*, 2018 IL 121417, ¶ 24. Specifically, in *McFadden* our supreme court stated that, with respect to the second amendment, the unlawful use of a weapon by a felon statute is a presumptively lawful, longstanding prohibition on the possession of firearms. *McFadden*, 2016 IL 117424, ¶ 35. Moreover, in *Burns*, our supreme court indicated that the legislature can constitutionally prohibit felons from carrying readily accessible firearms outside the home. *Burns*, 2015 IL 117387, ¶ 29.

¶ 18    The Illinois appellate court has also held that the imposition of a felon-based firearm ban does not fall within the scope of the second amendment. See *People v. Montgomery*, 2016 IL App (1st) 142143, ¶ 17 ("Although the second amendment does not categorically exclude

- 5 -

felons from its protection, this court has found that laws prohibiting felons from possessing firearms does [not] run afoul of the second amendment."); *Campbell*, 2014 IL App (1st) 112926, ¶ 60 (holding "felon-based firearm bans, like the [unlawful use of a weapon by a felon] and [armed habitual criminal] statutes, do not impose a burden on conduct falling within the scope of the second amendment"); *People v. Garvin*, 2013 IL App (1st) 113095, ¶¶ 33, 40 (considering the constitutionality of both the unlawful use of a weapon by a felon and armed habitual criminal statutes); *People v. Black*, 2012 IL App (1st) 110055, ¶ 13 (holding the armed habitual criminal statute could prohibit defendant felon from possessing a firearm in his own home); *People v. Ross*, 407 Ill. App. 3d 931, 942 (2011) (holding the armed habitual criminal statute is a constitutionally permissible restriction of the second amendment right to bear arms). The breadth of authority supports a conclusion that dispossessing felons from bearing arms is outside the scope of the second amendment.

¶ 19 However, our supreme court in *Chairez* agreed with other courts that "some level of scrutiny" should apply even to regulations which are "presumptively lawful." *Chairez*, 2018 IL 121417, ¶ 30 (citing *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) (explaining that courts should apply some level of scrutiny even to regulations identified in *Heller* as presumptively lawful), *Woollard v. Gallagher*, 712 F.3d 865, 875 (4th Cir. 2013) (stating that the court was not "obliged to impart a definitive ruling at the first step" but, rather, "deemed it prudent" to resolve some post-*Heller* challenges to firearm prohibitions at the second step), and *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 204 (5th Cir. 2012) ("Although we are inclined to uphold the challenged federal laws [banning the sale of firearms to persons under the age of 21] at step one of our analytical framework, in an abundance of caution, we proceed to step two.")). Therefore, we will follow *Chairez* and proceed to step two of the analysis, which requires this court to apply "the appropriate level of heightened means-ends scrutiny and consider the strength of the government's justification for restricting or regulating the exercise of second amendment rights." *Chairez*, 2018 IL 121417, ¶ 21; see *Garvin*, 2013 IL App (1st) 113095, ¶ 34 (holding felon-based firearm bans do not impose a burden on conduct falling within the scope of the second amendment but also examining whether the unlawful use of a weapon by a felon statute passed constitutional scrutiny). Since defendant raises an as-applied challenge to the statute, our second-step analysis will include a consideration of defendant's particular circumstances, namely the age and nature of his prior felony convictions along with his potential for rehabilitation. See *Chairez*, 2018 IL 121417, ¶ 30; *Campbell*, 2014 IL App (1st) 112926, ¶ 57.

¶ 20 We, however, must first determine the appropriate level of scrutiny in this case. In *Chairez*, our supreme court examined *Heller* and relevant Seventh Circuit cases and found that the heightened means-end analysis involves a sliding-scale approach. *Chairez*, 2018 IL 121417, ¶ 35. The court explained:

"[S]tep two of our second amendment analysis begins with a balance of considerations where the quantity and persuasiveness of the State's evidence required to justify the challenged restrictions varies depending on how much it affects the core second amendment right to armed self-defense and whose right it affects. [Citation.] The rigor of this means-end analysis 'depends on "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." ' [Citation.] The closer in proximity the restricted activity is to the core of the second

amendment right and the more people affected by the restriction, the more rigorous the means-end review. If the State cannot proffer evidence establishing both the law's strong public-interest justification and its close fit to this end, the law must be held unconstitutional. [Citation.]" *Id.* ¶ 45.

See also *Wilson v. County of Cook*, 2012 IL 112026, ¶¶ 41-42.

¶ 21    To determine where on the sliding scale of intermediate scrutiny the armed habitual criminal statute should be analyzed, we must first determine the breadth of the statute and the severity of its burden on the second amendment. *Chairez*, 2018 IL 121417, ¶ 46.

¶ 22    One commits the offense of armed habitual criminal when he or she receives, sells, possesses, or transfers any firearm after having been twice convicted of certain felonies enumerated in the statute. 720 ILCS 5/24-1.7(a)(2), (3) (West 2012). The core right protected by the second amendment is the right to self-defense, inside and outside the home. See *Chairez*, 2018 IL 121417, ¶ 48. As applied to defendant in this case, the armed habitual criminal statute prohibits him from possessing a firearm, as he was a twice-convicted felon, with prior convictions of unlawful use of a weapon by a felon and manufacture/delivery of a controlled substance. See 720 ILCS 5/24-1.7(a)(2), (3) (West 2012). As discussed previously, prohibiting felons from possessing firearms falls outside the scope of the second amendment. See *Campbell*, 2014 IL App (1st) 112926, ¶ 60. In addition, those individuals who can be classified as twice-convicted felons (*i.e.*, having two of the specific felonies as listed in the armed habitual criminal statute) constitute a relatively narrow group in relationship to the entire population. Therefore, because restricting felons from possessing firearms is not in close proximity to the core of the second amendment right and a narrow group of individuals is affected by the restriction, the intermediate scrutiny is less rigorous. See *Chairez*, 2018 IL 121417, ¶ 45; *Wilson*, 2012 IL 112026, ¶ 42 (acknowledging that "courts generally recognize that *Heller* rejected rational-basis review [of second amendment claims] and requires some form of heightened scrutiny"); see also *Montgomery*, 2016 IL App (1st) 142143, ¶ 18 (finding the armed habitual criminal statute to be constitutional under either rational basis or intermediate scrutiny); *Ross*, 407 Ill. App. 3d at 939 (applying intermediate scrutiny standard in upholding the constitutionality of the armed habitual criminal statute). "To withstand intermediate scrutiny, the legislative enactment must be substantially related to an important governmental interest." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 308 (2008). To survive such intermediate scrutiny, the fit between the challenged regulation and the asserted governmental objective need only be reasonable. *People v. Fields*, 2014 IL App (1st) 130209, ¶ 60.

¶ 23    Applying the level of intermediate scrutiny discussed, we conclude that the restrictions of the armed habitual criminal statute are a tight fit with its public interest justification. It is well-settled that prohibitions on the possession of firearms by felons are a permissible restriction on the constitutional right to bear arms. *Heller*, 554 U.S. at 626. The legislature enjoys wide latitude in prescribing criminal penalties under its police power and has an obligation to protect its citizens from known criminals. *Robinson*, 2011 IL App (1st) 100078, ¶ 31. Moreover, "[i]t is deeply rooted in our jurisprudence that the government inherently possesses and may lawfully exercise 'such power of restraint upon private rights as may be found to be necessary and appropriate to promote the health, comfort, safety and welfare of society and may enact prohibitions to promote the general welfare even though the prohibition invade[s] the right of liberty or property of an individual.' " *Ross*, 407 Ill. App. 3d at 942

(quoting *Napleton*, 229 Ill. 2d at 310). The armed habitual criminal statute reflects the legitimate governmental interest in preventing the danger associated with repeat felons having firearms. *Black*, 2012 IL App (1st) 110055, ¶ 13; see *Ross*, 407 Ill. App. 3d at 942; *Garvin*, 2013 IL App (1st) 113095, ¶ 40. Furthermore, the armed habitual criminal statute is not a comprehensive ban, but rather it affects only a certain limited class of people, namely those individuals who have been twice convicted of certain defined felonies. See 720 ILCS 5/24-1.7 (West 2012). We find the armed habitual criminal statute does not restrict activity that is at the core of the second amendment, addresses a significant government interest, and has restrictions closely related to that interest.

¶ 24     Defendant argues that the armed habitual criminal statute is unconstitutional as applied to him because (1) his prior felony convictions were nonviolent and occurred over 20 years ago and (2) he has been rehabilitated since his last felony conviction in 1992. Defendant cites *Binderup v. Attorney General*, 836 F.3d 336, 356-57 (3d Cir. 2016) (opinion of Ambro, J., joined by Smith and Greenaway Jr., JJ.), *Britt v. State*, 681 S.E.2d 320 (N.C. 2009), and *Baysden v. State*, 718 S.E.2d 699 (N.C. Ct. App. 2011) in support of his position.

¶ 25     Defendant relies primarily on the case of *Binderup* to demonstrate that the armed habitual criminal statute must be held unconstitutional as applied to him.[2] *Binderup* involved complaints for declaratory and injunctive relief filed in two separate Pennsylvania federal district courts by two plaintiffs, Daniel Binderup and Julio Suarez (the challengers). *Binderup*, 836 F.3d at 340 (majority opinion). Binderup had pled guilty in a Pennsylvania state court to corrupting a minor, a misdemeanor subject to possible imprisonment for up to five years. *Id.* His sentence, however, "was the colloquial slap on the wrist: probation (three years) and a $300 fine plus court costs and restitution." *Id.* Suarez, while in Maryland, pled guilty in state court to unlawfully carrying a handgun without a license, a misdemeanor subject to possible imprisonment for not less than 30 days and not more than three years or a specified fine. *Id.* Suarez received a suspended sentence of 180 days' imprisonment and a $500 fine, followed by a year of probation. *Id.* Pennsylvania law disqualified the challengers from possessing firearms due to their convictions, but in 2009 they successfully petitioned the Pennsylvania courts to remove that prohibition. *Id.* Federal law, however, continued to bar them from possessing firearms because their convictions had not been expunged or set aside, they had not been pardoned, and their civil rights had not been restored. *Id.*; 18 U.S.C. § 922(g)(1) (2006) (prohibiting possession of firearms by any person convicted in any court of "a crime punishable by imprisonment for a term exceeding one year"); see 18 U.S.C. § 921(a)(20) (2006). They argued that, as a matter of statutory construction, the federal law (*id.* § 922(g)(1)) did not apply to their convictions and, if it did, the statute was unconstitutional as applied to them. *Binderup*, 836 F.3d at 340 (majority opinion).

¶ 26     The federal district court rejected their statutory argument, but held that section 922(g)(1) was unconstitutional as applied. *Id.* at 340-41. The Court of Appeals for the Third Circuit, *en banc*, considered the challengers' as-applied argument under a two-step test. *Id.* at 347 (opinion of Ambro, J., joined by Fuentes, Smith, Greenaway Jr., Vanaskie, Krause, and Roth, JJ.). In considering the first step, the *Binderup* court observed that most "scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens." (Internal

---

[2]We observe that *Binderup* was a fractured, plurality decision. See *Binderup*, 836 F.3d at 338.

quotation marks omitted.) *Id.* at 348 (quoting *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010)). The court further observed that *Heller* "recognized 'longstanding prohibitions on the possession of firearms by felons,' not just violent felons" and therefore concluded that "[t]he category of 'unvirtuous citizens' is thus broader than violent criminals; it covers any person who has committed a *serious* criminal offense, violent or nonviolent." (Emphasis added.) *Id.* (quoting *Heller*, 554 U.S. at 626).

¶ 27　　　Having found that only those convicted of "serious crimes" can forfeit their right to possess firearms, the *Binderup* court went on to step two and determined that there was "not a substantial fit between the continuing disarmament of the [c]hallengers and an important government interest." *Id.* at 356 (opinion of Ambro, J., joined by Smith and Greenaway Jr., JJ.). In so finding, the court discussed four defining factors that were unique to the challengers' prior felonies: (1) the state legislatures had enacted the offenses as misdemeanors, which "are, and traditionally have been, considered less serious than felonies"; (2) the lack of violence involved in the offense; (3) the minor sentences imposed; and (4) a lack of a "cross-jurisdictional consensus regarding the seriousness of the [c]hallengers' crimes." *Id.* at 351-52. In sum, the *Binderup* court concluded that "[t]he [c]hallengers' isolated, decades-old, non-violent misdemeanors do not permit the inference that disarming people like them will promote the responsible use of firearms." *Id.* at 356.

¶ 28　　　In the present case, we find defendant's particular circumstances distinguish him from the challengers in *Binderup*. Our state legislature has classified defendant's prior offenses (manufacture/delivery of a controlled substance offense and unlawful use of a weapon by a felon) as felonies, not misdemeanors as in *Binderup*. See 720 ILCS 570/401 (West 2012); 720 ILCS 5/24-1.1 (West 2012). Even the *Binderup* court itself noted that a state-law felon's "burden would be extraordinarily high—and perhaps even insurmountable" to demonstrate that the crime was not serious. *Binderup*, 836 F.3d at 353 n.6 (opinion of Ambro, J., joined by Smith and Greenaway Jr., JJ.). Additionally, unlike the challengers in *Binderup*, defendant here waited until after he was convicted of being in possession of a firearm to challenge the constitutionality of the armed habitual criminal statute. While defendant was initially sentenced to probation for his manufacture/delivery of a controlled substance offense, he subsequently violated his probation and was sentenced to three years' imprisonment. Defendant was also sentenced to three years' imprisonment for the unlawful use of a weapon by a felon conviction. In contrast, the *Binderup* challengers were never imprisoned. Finally, we observe that our Illinois jurisprudence has consistently upheld the constitutionality of the armed habitual criminal statute against facial and as-applied challenges even where the underlying felony was nonviolent. See *Montgomery*, 2016 IL App (1st) 142143, ¶ 19.

¶ 29　　　Defendant maintains that, like the challengers in *Binderup*, his prior felony offenses were nonviolent. In response, the State disagrees and posits that defendant's drug conviction is equivalent to a violent offense, citing *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) ("drug dealing is notoriously linked to violence" and "[a]ssuming arguendo that the Supreme Court might find some felonies so tame and technical as to be insufficient to justify the ban, drug dealing is not likely to be among them"). We observe that the armed habitual criminal statute does not provide any exceptions for a person convicted of nonviolent felonies. Moreover, unlike the statutes involved in *Binderup*, our state legislature expressly included within the armed habitual criminal statute that "any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher" is

a qualifying felony. 720 ILCS 5/24-1.7(a)(3) (West 2012). Thus, our legislature already contemplated what was discussed in *Binderup*—that only those convicted of "serious crimes" can forfeit their right to possess firearms. See *Binderup*, 836 F.3d at 351 (opinion of Ambro, J., joined by Smith and Greenaway Jr., JJ,). Accordingly, we decline to find that the armed habitual criminal statute is unconstitutional as applied to defendant even if his previous felonies could be considered nonviolent.

¶ 30    In so concluding, we find *Montgomery* to be instructive. In *Montgomery*, the defendant was found guilty of being an armed habitual criminal and unlawful use of a weapon by a felon after police seized firearms and ammunition from his home during the execution of a search warrant. *Montgomery*, 2016 IL App (1st) 142143, ¶ 1. On appeal, the defendant argued that the statutes were unconstitutional as applied to him because his prior felony convictions were nonviolent and he kept the firearms for protection. *Id.* ¶ 8. The *Montgomery* court first concluded that neither statute implicated the second amendment where the Supreme Court in *Heller* "noted that its decision does not cast doubt on the longstanding prohibitions on, *inter alia*, the possession of firearms by felons" and "our [Illinois] [S]upreme [C]ourt [has] expressed its approval of felon-based bans on firearm possession." *Id.* ¶¶ 14-15 (citing *Heller*, 554 U.S. at 626-27, and *Aguilar*, 2013 IL 112116, ¶ 26). The reviewing court further observed that "this court has consistently rejected constitutional challenges to the statutes at issue here" and thus declined to depart from these holdings. *Id.* ¶ 16 (citing, in pertinent part, *Campbell*, 2014 IL App (1st) 112926, ¶ 60 (holding "felon-based firearm bans, like the [unlawful use of a weapon by a felon] and [armed habitual criminal] statutes, do not impose a burden on conduct falling within the scope of the second amendment")); see *Garvin*, 2013 IL App (1st) 113095, ¶ 40 (finding the unlawful use of a weapon by a felon statute, like the armed habitual criminal statute, is a valid exercise of Illinois's right to protect the health, safety, and general welfare of its citizens of the potential danger posed by convicted felons in possession of firearms or firearm ammunition); *Black*, 2012 IL App (1st) 110055, ¶ 13 (holding armed habitual criminal statute could prohibit the defendant-felon from possessing a firearm in his own home); *Ross*, 407 Ill. App. 3d at 942 (holding the armed habitual criminal statute is a constitutionally permitted restriction of the second amendment right to bear arms).

¶ 31    Second, the *Montgomery* court rejected defendant's as-applied challenge to the unlawful use of a weapon by a felon statute, observing (as we have here) that the unlawful use of a weapon by a felon statute "does not provide any exceptions for persons convicted of nonviolent felonies" and that no such exception was recognized by the Supreme Court in *Heller* and *McDonald. Montgomery*, 2016 IL App (1st) 142143, ¶ 19 (finding even if the defendant had made a procedurally proper as-applied constitutional challenge to the unlawful use of a weapon by a felon statute, the court would still reject his claims where the unlawful use of a weapon by a felon statute does not include an exception for persons convicted of nonviolent felonies and neither *Heller* nor *McDonald* recognized such an exception (citing 720 ILCS 5/24-1.1(a) (West 2012), and *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 32)). The *Montgomery* court thus concluded that the statute is not unconstitutional as applied to the defendant even though his previous felonies were nonviolent. *Id.*

¶ 32    Defendant cites no relevant authority in support of his additional claims that the age of his felony convictions and his rehabilitation since completing those sentences render the armed habitual criminal statute unconstitutional as applied to him. Defendant cites two cases having no precedential value in this court, *Britt* and *Baysden*, to support these claims. *Britt* and

*Baysden* involve similar sets of facts. The plaintiffs in each case had been convicted of nonviolent felonies in the 1970s. *Britt*, 681 S.E.2d at 321; *Baysden*, 718 S.E.2d at 701. After completing their respective sentences, their civil rights were fully restored by operation of law, including their right to possess a firearm. *Britt*, 681 S.E.2d at 321; *Baysden*, 718 S.E.2d at 701. Both plaintiffs owned firearms for 17 years or more without any incident until the North Carolina General Assembly changed the law in 2004 and prohibited the possession of all firearms by any person convicted of any felony. *Britt*, 681 S.E.2d at 321; *Baysden*, 718 S.E.2d at 701-02. Thereafter, the plaintiffs intentionally divested themselves of their firearms and filed suits in North Carolina state courts challenging the law as unconstitutional. In undertaking a rational basis review, the North Carolina courts ultimately concluded that the law was unconstitutional as applied to the plaintiffs. *Britt*, 681 S.E.2d at 323; *Baysden*, 718 S.E.2d at 703-04. As stated in *Britt*,

> "[p]laintiff, through his uncontested lifelong nonviolence towards other citizens, his thirty years of law-abiding conduct since his crime, his seventeen years of responsible, lawful firearm possession between 1987 and 2004, and his assiduous and proactive compliance with the 2004 amendment, has affirmatively demonstrated that he is not among the class of citizens who pose a threat to public peace and safety." *Britt*, 681 S.E.2d at 323.

See *Baysden*, 718 S.E.2d at 704.

¶ 33    We decline to consider these cases as persuasive authority as the plaintiffs in those cases conclusively demonstrated their respect for the law by divesting themselves of their weapons when the law changed and sought redress through the judicial system. Unlike the *Britt* and *Baysden* plaintiffs, defendant here possessed a firearm knowing that he was a twice-convicted felon and only sought to challenge the law regarding his possession of a firearm after he was charged with the weapons-related offenses. These facts cut against defendant's argument that he has been rehabilitated. Moreover, we observe the courts in *Britt* and *Baysden* applied a rational basis inquiry. *Britt*, 681 S.E.2d at 323; *Baysden*, 718 S.E.2d at 703-04. Furthermore, it is notable that the North Carolina plaintiffs were legally allowed to possess weapons for 17 years prior to the change in the law that made their possession of firearms illegal. *Britt*, 681 S.E.2d at 321; *Baysden*, 718 S.E.2d at 701-02.

¶ 34    Defendant also asserts that the fact his first felony conviction for manufacture/delivery of a controlled substance, which occurred when he was age 17, is now no longer punishable as an adult offense supports his conclusion that the armed habitual criminal statute is unconstitutional as applied. Defendant, however, cites no relevant authority that a subsequent change in the law has any bearing on the nature of his first felony conviction or his status as a felon. Accordingly, we find this argument to be forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2017); *People v. Hunt*, 234 Ill. 2d 49, 67 (2009) (points not argued with citation to authority are forfeited).

¶ 35    In sum, the armed habitual criminal statute "is a valid exercise of Illinois's right to protect the health, safety, and general welfare of its citizens from the potential danger posed by convicted felons in possession of firearms" and survives intermediate scrutiny. *Garvin*, 2013 IL App (1st) 113095, ¶ 40. The application of the armed habitual criminal statute is not unconstitutional as applied to defendant, who committed two prior felonies, despite his assertions that these were older, nonviolent felonies and that he has since been rehabilitated.

Accordingly, we hold that the judgment of the circuit court is affirmed.

¶ 36                                    CONCLUSION

¶ 37        For the reasons stated above, the armed habitual criminal statute is not unconstitutional as applied to defendant. Therefore, we affirm the judgment of the circuit court of Cook County.

¶ 38        Affirmed.